## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF SOUTH CAROLINA
### Greenville Division

| | | |
|---|---|---|
| IKON OFFICE SOLUTIONS, INC., | : | CIVIL ACTION NO. 09-cv-00625- |
| | : | HFF |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| DONALD B. RHEA; KEVIN VINCENT; and | : | |
| THE PRINT MACHINE, INC. AND THE | : | |
| PRINT MACHINE OF COLUMBIA, INC., | : | |
| D/B/A TPM INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |

### CONSENT ORDER

0.        WHEREFORE, the Court, upon consideration of the joint stipulation of the

parties, being apprised of the parties' agreement to the terms of this Order, and being

otherwise duly advised in the premises,

**IT IS HEREBY ORDERED AND DECREED THAT:**

1.     An injunction shall issue immediately, on the terms set forth in this Order, and, by agreement of the parties, no

security shall be required in support thereof.

2.     Donald Rhea ("Rhea") shall not, through and including September 15, 2010 (the "Rhea Restricted Period"), directly

or indirectly, whether acting alone or in concert with others (including, but not limited to, any officer, agent,

employee, or representative of TPM or any other employer with which Rhea may become employed through and

including through the Rhea Restricted Period), solicit, attempt to solicit, initiate contact with, attempt to initiate

contact with, accept business from, accept commissions or fees concerning, or otherwise engage in business with, or

for, any IKON Customer, as defined herein.

3.        Rhea shall, on each and every occasion or circumstance in which he has contact, solicits,

or assists any other person to have contact or solicit, any customer not known to him to be an IKON Customer, diligently inquire of any and all such customers (and of any other person involved in the transaction or solicitation if Rhea's initial involvement does not involve the customer), beginning with his first communication with the customer or other person involved in the transaction or solicitation, whether the customer is an IKON Customer as defined herein. In the event a customer discloses information indicating and/or confirming that it is an IKON Customer, Rhea shall immediately terminate all past and/or pending solicitation efforts and will, in accordance with the terms of this Paragraph, immediately and strictly refrain from any and all further attempts to solicit and/or to conduct and/or accept current or future business with and/or from such customer, directly or indirectly, or to assist any other person to do so, during the Rhea Restricted Period. In addition, TPM, and all employees and agents of TPM will refrain from contacting the IKON Customer for at least 30 days following the time when the IKON Customer makes such disclosure/confirmation, except that TPM may not contact any such IKON Customer if Rhea has disclosed any information concerning such customer to TPM, has otherwise assisted TPM with regard to such customer, or has otherwise violated the terms of the parties' agreement with respect to such customer.

4.      TPM and Rhea shall, within seven (7) calendar days following their execution of the separate Settlement Agreement and Release entered into among the parties, relinquish, rescind, withdraw from, and cancel, any and all pending sales contracts, lease agreements, service, maintenance or supply agreements, and facilities management agreements, if any, that Rhea has, directly or indirectly, proposed to, has been negotiating with, or has assisted any other person to propose to or negotiate with, any and all IKON Customers. Written confirmation and notice of each such withdrawal, relinquishment, rescission, and/or cancellation shall be sent to each customer affected by the terms of this provision and a copy thereof provided simultaneously therewith to IKON, c/o its counsel, Shannon Hampton Sutherland, Esq., Duane Morris LLP (via both first class mail to 30 South Seventeenth Street, Philadelphia, PA 19103 and via facsimile to (215) 979-1020).

5.      TPM and Rhea, for a period through and including September 15, 2010 (the "Facilities Management Restricted Period"), shall not, directly or indirectly (including, but not limited to, through any officer, agent, employee, or representative of TPM), provide, contract to provide, offer to provide, solicit orders or agreements for, sell, provide, or service equipment for, or provide personnel for, or otherwise engage in facilities management services or other managed services within or for the areas for which Rhea was responsible on behalf of

IKON, i.e., (i) the State of South Carolina or (ii) the North Carolina counties supported by the Charlotte, Asheville, or Hickory offices of IKON.

6.          If TPM places equipment within an IKON Customer, TPM shall not, either before, simultaneously, or for a period of 90 days following the completion of such placement or placements, enter into an agreement with any third party, or work in collaboration with any third party, whereby facilities management or managed services will be provided to that customer.  However, if TPM has placed such equipment with the assistance of, or with information from, Rhea, or in any other way that is in violation of the parties' separate Settlement Agreement and Release, TPM shall not, at any time, enter into an agreement with any third party, or work in collaboration with any third party, whereby facilities management or managed services will be provided to that customer.  The limitations in this paragraph 5 shall not extend to any customer that is not an IKON Customer.

7.          Rhea and TPM, for a period through and including September 15, 2010, shall not directly solicit, induce, or encourage for hire any person who was or is an employee of IKON at any time from January 1, 2008 through September 15, 2010 (hereinafter referred to as "IKON Employee").  This limited prohibition against the solicitation of IKON Employees shall apply to Rhea and TPM both individually and collectively, both directly and indirectly, and whether they are acting alone or in concert with any others, including any agent, employee, officer or other representative of TPM, shall apply to any entity affiliated with TPM, and, with respect to Rhea only, acting in direct or indirect concert with any other employer or company with which Rhea hereafter may become employed and/or affiliated at any time during the period extending through September 15, 2010.  This prohibition shall not prohibit TPM from making general advertisements that are not directed or targeted to IKON Employees.

8.          TPM has the following additional obligations:    (i) TPM shall inquire of every current or former IKON employee who applies for a job with TPM whether or not that employee signed an agreement with IKON containing any post-employment restrictive covenant (or any other employment agreement) with IKON; (b) if the individual has signed an agreement with IKON containing any post-employment restrictive covenant, or other agreements with IKON, TPM shall not to challenge the enforceability of that or those agreement(s) and shall not interfere with it/them; (c) TPM shall require that every such applicant certify in writing that it is not in possession of, will not remove from, and has returned to IKON, any confidential, proprietary, or trade secret IKON information,

and (d) TPM shall not ask or permit any such applicant to remove, retain, disclose, or use any confidential, proprietary, or trade secret IKON information or otherwise ask or permit any such applicant to violate the terms of any agreement between IKON and such applicant.

9.         Rhea shall not directly or indirectly use or disclose for any purpose, and TPM shall not knowingly permit any such use or disclosure, in any manner or at any time, by Rhea or by any other person by or on behalf of TPM, any information concerning IKON's customers or prospective customers, purchase prices, past transactions, projects, proposals, customer specifications, pricing schedules, pricing margins, pricing discounts, quality control procedures or standards, customer preferences, customer identities, contact persons, personnel, decision-makers, IKON marketing and sales strategies, profitability analyses, costs, vendors, or other confidential business information that he/they learned, received, or used during his employment with IKON or which he has received at any time from any current or former IKON employee, whether before or after the date of Rhea's termination of employment with IKON.  This prohibition shall apply to TPM and Rhea both directly and indirectly, both individually and collectively, and whether he/they act(s) alone or in concert with any one or more other persons, including, but not limited to, any agent, employee, officer, or other representative of TPM, or in direct or indirect concert with any other employer or company with which Rhea has been or may hereafter become employed, under contract with, interested in or affiliated with at any time.  Notwithstanding the foregoing, however, and provided that any such knowledge or information is not obtained as the result or consequence of any violation of the terms of the Settlement Agreement and Release executed by the parties or the terms of this Consent Order, Rhea and TPM are not prohibited from using or disclosing any information generally known to the public in substantially the same form or obtained by either of them by otherwise lawful means.

10.         Within 72 hours of the execution of the execution of the parties' separate final Settlement Agreement and Release, Rhea, Defendant Kevin Vincent ("Vincent"), TPM, and each employee, officer, director, principal, and agent of TPM, shall execute, and return to IKON, the affidavits attached thereto as Exhibit "B" regarding the return of IKON's confidential, proprietary and trade secret information.  Without limiting any other remedies that will be available to IKON if the affidavits referenced above are not executed within the time provided, if the affidavits are not executed within the time provided, then IKON shall be entitled to a presumption that all IKON confidential, proprietary, and trade secret information has not been returned to IKON.  In that event, Rhea,

Vincent, TPM and/or each employee, officer, director, principal and agent of TPM shall, within five (5) days after execution of this Settlement Agreement and Release, return to IKON any and all records, documents, computer disks, portable devices or drives, computer tapes, computer memory and recordings, computer files, software and programs, and any and all other original, transcribed, or reproduced information, in whatever form, and all copies thereof, that he/it/they have in his/their actual or constructive possession, if any, that Rhea has at any time in the past maintained at, received through, created through, or removed from IKON, or in connection with his servicing of any customer or prospective customer of IKON, and further including any and all such information created by him or by others at or on behalf of IKON, used by him or by others in the same or other form at IKON, retained at any time during or after his employment at IKON, or otherwise received, at any time or for any reason, from any current or former IKON employee or customer, that (i) contains any names, addresses, phone numbers, account information, contact persons, decision-makers, personnel, assistants, secretaries, support staff, customer specifications, pricing information or schedules, discount terms, volume requirements, quality control standards, customer or contract specifications, lease expirations, contract terms, quality control standards, past transactions, and any and all other information that relates in any way to the business done by IKON with any of IKON's customers; or (ii) contains any information contained in the books and records of IKON, including, but not limited to, the identity of or information concerning IKON's customers, key personnel, marketing strategies, past transactions, past or current sales proposals, pricing schedules and strategies, price margins, profitability considerations, contract terms, project specifications or arrangements, discount policies, transaction records, future business practices, plans and/or customer relations. Rhea agrees that he shall not, directly or indirectly, retain any such records or information in any form. TPM shall (a): cause the return to IKON any and all records, documents, computer information, and materials described in this paragraph, and all copies or other reproductions thereof in any form, with respect to any and all circumstances, present or future, where it knows or suspects that the source of the information was IKON or an IKON employee; and (b) prohibit the retention, disclosure, or use, and take all reasonable steps necessary to ensure against any such retention, disclosure, or use, by Rhea, or any other employee, agent, officer, or representative of TPM, of the above-described records or information in any form or for any business purpose.

The obligation to return the records and information described in this paragraph, as described herein, shall extend to the complete retrieval and return of any and all such records and information which Rhea has in his possession,

over which he has control, and/or to which he has access, including, but not limited to, the recovery and return of any and all such records and information provided by him at any time to TPM, or to any other third party or person (including any and all representatives, employees, officers, or agents of TPM, or any other business, company or entity), but shall not extend to the return of any records or information provided to him, by a customer in the ordinary course of business subsequent to the time he became employed by TPM provided that such contact was not in violation of the Settlement Agreement and Release executed by the parties or this Consent Order. TPM shall take all reasonable steps necessary to ensure that Rhea complies with the terms of this paragraph and, further, TPM shall a) not permit Rhea, or any other employee, agent, officer, or representative of TPM to retain or use any of the records or information described in this paragraph, and b) return any and all such records or information to counsel for IKON (Shannon Hampton Sutherland, Esq., c/o Duane Morris LLP, 30 South Seventeenth Street, Philadelphia, PA 19103) in the event it learns or discovers, at any time, that such records or information is on TPM's premises, in TPM's computer systems, or is otherwise within its possession or control, or that TPM has access to such records or information either directly or through one or more of its employees, agents, officers, or representatives. TPM and Rhea may comply with this paragraph by providing a written statement, duly notarized by law, to counsel for IKON (Shannon Hampton Sutherland, Esq., c/o Duane Morris LLP, 30 South Seventeenth Street, Philadelphia, PA 19103) representing and warranting that he/it does not have any of the identified information in his/its possession or control. Additionally, any information identified in this paragraph that is otherwise available in the same form to the general public or legally available through third parties, and not otherwise retained or obtained by or through any violation of the terms of any prior agreement, this Consent Order, or the Settlement Agreement and Release executed by the parties, shall not be subject to disclosure under this paragraph.

11.     Rhea, Vincent, and TPM shall, and all its officers, employees, agents, and representatives (including, but not limited to, Rhea and Vincent) shall, refrain from making any and all communications, representations, statements, inferences, or suggestions that, or to the effect that: (a) IKON is not committed to the North Carolina or South Carolina Marketplaces; (b) IKON is not committed to servicing, or able to service, the North Carolina or South Carolina Marketplaces; (c) IKON is not capable of servicing Canon-brand equipment; or making any other such communications, representations, statements, inferences or suggestions that IKON is not fully operational or capable of doing business in the North Carolina or South Carolina Marketplaces. Further, Rhea, Vincent and TPM, whether alone or in concert with others, including, but not limited to, any officer, agent,

employee, and/or representative of TPM, shall not disseminate to any person or entity any false, misleading, defamatory, disparaging, or libelous statements about IKON, its business, its products, or its services. Notwithstanding the foregoing, Rhea, Vincent, and TPM, and anyone acting in concert or participation with Rhea, Vincent, or TPM, including any agent, employee, officer or representative of TPM, may convey, to any customer or potential customer who specifically requests such information, the full, complete, and exact information contained in Exhibit "C" to the separate Settlement Agreement and Release executed by the parties. Nothing in this paragraph shall be read to allow Rhea, Vincent, or TPM, or anyone acting in concert or participation with Rhea, Vincent, or TPM, to convey solely excerpts of the information contained in Exhibit "C" to the Settlement Agreement and Release executed by the parties. The parties shall otherwise be bound not to defame or disparage each other in accordance with the common law standards and precedents applicable under South Carolina law.

12.     For the purposes of this Consent Order, an "IKON Customer" shall include any individual or entity, within or for (i) the State of South Carolina or (ii) the North Carolina counties supported by the Charlotte, Asheville, or Hickory offices of IKON: (i) who uses, leases, or possesses office equipment sold or leased to the customer by IKON or its current or prior financing affiliates (for example, IKON Financial Services); (ii) whose office equipment has been serviced by IKON within the six (6) month period prior to the termination of Rhea's employment with IKON, or at any time since then; and/or (iii) who receives managed or other services from IKON,. The terms "uses" and "possesses" used in this paragraph only refer to equipment that has been operated by the customer, or on the customer's behalf, at any time since August 1, 2008.

13.     Rhea, Vincent, and TPM shall jointly and severally pay to IKON the total aggregate sum set forth in the separate Settlement Agreement between the parties, for receipt by no later than ten (10) business days from the date of execution by TPM of the Settlement Agreement and Release.

14.     The parties shall each bear its/his/their own costs and attorneys' fees incurred through the date of this Order.

15.     This proceeding shall be dismissed, with prejudice, subject to being reopened for purposes of enforcing the terms of this Order and the terms of the parties' Settlement Agreement and Release relating hereto. The Court shall retain jurisdiction for purposes of any further proceedings relating to this Order or the

parties' settlement.


**DONE AND ORDERED** this \_\_\_4th\_\_\_ day of September, 2009.

                                        BY THE COURT:


                                        s/Henry F. Floyd
                                        UNITED STATES DISTRICT JUDGE

AGREED BY THE PARTIES THIS 4th day of September, 2009

For:
Donald Rhea, Kevin Vincent, and The Print Machine, Inc. and The Print Machine of Columbia, Inc. d/b/a TPM, Inc

By: __/s/ N. Heyward Clarkson_____
N. Heyward Clarkson
District Court I.D. No. 154
Trey Still
  District Court I.D. No. 9857
  Clarkson, Walsh, Terrell, & Coulter P.A.
  1164A Woodruff Road
  Greenville, SC 29607
  Ph: 864.232-4400
  hclarkson@clarksonwalsh.com
  tstill@clarksonwalsh.com

  *Counsel for Defendant Donald Rhea*

By: ___/s/ Charles F. Turner_____
          Charles F. Turner
          District Court I.D. No. 5849
          Samuel C. Weldon
Turner  Padget  Graham & Laney  P.A.
200 East Broad Street, Suite 250
Greenville SC 29601Ph: 864.232-4400
CTurner@TurnerPadget.com
SWeldon@TurnerPadget.com

  *Counsel for Defendants Kevin Vincent, The Print Machine, Inc. and The Print Machine of Columbia, Inc. d/b/a*
          *TPM, Inc.*

For:

     IKON Office Solutions, Inc.


By:  _/s/ Thomas E. Lydon_____

Thomas E. Lydon

District Court I.D. No. 1056

MCANGUS GOUDELOCK & COURIE, LLC

700 Gervais St Ste 300

Columbia SC 29201-3061

Ph:  803.227.2292

Fax:  803.748.0526

tlydon@mgclaw.com


*Of counsel:*

Thomas T. Loder

Lawrence H. Pockers

Shannon Hampton Sutherland
    John T. Crutchlow

DUANE MORRIS LLP

30 S. 17th Street

Philadelphia, Pennsylvania 19103

Ph:  215.979.1000

ttloder@duanemorris.com

lhpockers@duanemorris.com

shsutherland@duanemorris.com
jtcrutchlow@duanemorris.com

*Counsel for PlaintiffIKON Office Solutions, Inc.*

For:
Donald Rhea, Kevin Vincent, and The Print Machine, Inc. and The Print Machine of Columbia, Inc. d/b/a TPM, Inc

By: __/s/ N. Heyward Clarkson_____
N. Heyward Clarkson
District Court I.D. No. 154
Trey Still

District Court I.D. No. 9857
Clarkson, Walsh, Terrell, & Coulter P.A.

1164A Woodruff Road

Greenville, SC 29607

Ph: 864.232-4400

hclarkson@clarksonwalsh.com
tstill@clarksonwalsh.com

*Counsel for Defendant Donald Rhea*

By: __/s/ Charles F. Turner_____
Charles F. Turner
District Court I.D. No. 5849
Samuel C. Weldon

Turner Padget Graham & Laney P.A.

200 East Broad Street, Suite 250

Greenville SC 29601Ph: 864.232-4400

CTurner@TurnerPadget.com
SWeldon@TurnerPadget.com

*Counsel for Defendants Kevin Vincent, The Print Machine, Inc. and The Print Machine of Columbia, Inc. d/b/a TPM, Inc.*